# EXHIBIT A

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Danielle Long, Ashley Stockard, Joy Fugateet al v. Phoenix Staffing Group, Inc., Jill Bush

| Case Number | 55D02-2012-MI-001823 |
|---|---|
| Court | Morgan County Superior Court 2 |
| Type | MI - Miscellaneous Civil |
| Filed | 12/01/2020 |
| Status | 01/08/2021 , Decided |
| Related | Other |
| | 55D02-2101-PL-000016 |

## Parties to the Case

**Defendant**   Phoenix Staffing Group, Inc.

<u>Attorney</u>
David Lee Swider
*#51749, Retained*

BOSE McKINNEY & EVANS LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204
317-684-5000(W)

**Defendant**   Bush, Jill

<u>Attorney</u>
David Lee Swider
*#51749, Retained*

BOSE McKINNEY & EVANS LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204
317-684-5000(W)

**Plaintiff**   Long, Danielle

**Plaintiff**   Stockard, Ashley

<u>Attorney</u>
Jay Meisenhelder
*#1999649, Retained*

650 North Girls School Road
Suite D 40
Indianapolis, IN 46214
317-231-5193(W)

**Plaintiff**   Fugate, Joy

**Plaintiff**   Swanson, Desiree

Chronological Case Summary

Summary of Case

---

12/01/2020    **Case Opened as a New Filing**

---

12/01/2020    **Complaint/Equivalent Pleading Filed**
Complaint

| | |
|---|---|
| Filed By: | Long, Danielle |
| Filed By: | Stockard, Ashley |
| Filed By: | Fugate, Joy |
| Filed By: | Swanson, Desiree |
| File Stamp: | 12/01/2020 |

---

12/03/2020    **Subpoena/Summons Filed**
Summonses-Combined

| | |
|---|---|
| Filed By: | Long, Danielle |
| Filed By: | Stockard, Ashley |
| Filed By: | Fugate, Joy |
| Filed By: | Swanson, Desiree |
| File Stamp: | 12/01/2020 |

---

12/28/2020    **Appearance Filed**
E-Filing Appearance by Attorney in Civil Case

| | |
|---|---|
| For Party: | Phoenix Staffing Group, Inc. |
| For Party: | Bush, Jill |
| File Stamp: | 12/23/2020 |

---

12/28/2020    **Motion for Enlargement of Time Filed**
Motion for Extension of Time to Respond to Plaintiffs' Complaint

| | |
|---|---|
| Filed By: | Phoenix Staffing Group, Inc. |
| Filed By: | Bush, Jill |
| File Stamp: | 12/23/2020 |

---

01/04/2021    **Order Issued**
Order Granting Motion for Extension of Time to Respond to Plaintiffs' Complaint and Order Redocketing Case as a CP Case Type

| | |
|---|---|
| Judicial Officer: | Williams, Brian |
| Order Signed: | 01/01/2021 |

---

01/05/2021    **Automated ENotice Issued to Parties**
Order Issued ---- 1/4/2021 : David Lee Swider;Jay Meisenhelder

---

## Financial Information

\* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances shown, please contact the Clerk's Office.

**Swanson, Desiree**
Plaintiff

**Balance Due** (as of 01/19/2021)
0.00

Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 157.00 | 0.00 | 157.00 |

## Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 12/01/2020 | Transaction Assessment | 157.00 |
| 12/01/2020 | Electronic Payment | (157.00) |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MORGAN SUPERIOR COURT |
| | ) ss: | |
| COUNTY OF MORGAN | ) | CAUSE NO. 55D02-2012-MI-001823 |

| | |
|---|---|
| DANIELLE LONG, JOY FUGATE, | ) |
| DESIREE SWANSON,  and | ) |
| ASHLEY STOCKARD, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PHOENIX STAFFING GROUP, INC. | ) |
| and JILL BUSH, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR UNPAID WAGES

### I. INTRODUCTION

Plaintiffs Danielle Long, Joy Fugate, Desiree Swanson,  and Ashley Stockard (collectively, "Plaintiffs") sue their former employer, Phoenix Staffing Group, Inc., and its owner and President, Jill Bush (together, "Defendants"), for failing to pay wages owed them pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.;  the Indiana Minimum Wage Law ("MWL"), Ind. Code 22-2-2-3, *et seq*.; the Indiana Wage Claim Act ("WCA"), Ind. Code 22-2-5-1, *et seq*.; and/or the Indiana Wage Payment Act ("WPA")(Ind. Code 22-2-5-, *et seq*.).   Additionally, Plaintiffs sue Defendants for civil conversion, pursuant to Ind. Code 34-24-3-1.

### II.  PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Danielle Long ("Long") is a resident of Mooresville, Morgan County, Indiana, and at all times relevant to this Complaint, has worked for the Defendant in Morgan County, Indiana.

2.     Plaintiff Joy Fugate ("Fugate") is a resident of Mooresville, Mogan County, Indiana,

and at all times relevant to this Complaint, has worked for the Defendant in Morgan County, Indiana.

3.    Plaintiff Desiree Swanson ("Swanson") is a resident of Mooresville, Mogan County, Indiana, and at all times relevant to this Complaint, has worked for the Defendant in Morgan County, Indiana.

4.    Plaintiff Ashley Stockard ("Stockard") is a resident of Indianapolis, Marion County, Indiana, and at all times relevant to this Complaint, has worked for the Defendant in Morgan County, Indiana.

5.    Defendant Phoenix Staffing Group, Inc. ("Phoenix"), is a domestic, for-profit limited liability company, headquartered in Mooresville, Indiana.

6.    Defendant Jill Bush ("Bush"), is the President of Phoenix, and is responsible for the business and financial operations of the company, including but not limited to all pay, payroll, withholding, and scheduling decisions.

7.    At all times relevant to this action, Plaintiffs worked for Defendants at Phoenix's facility in Mooresville, Indiana.

8.    All the events giving rise to this cause of action having occurred in Morgan County, Indiana, jurisdiction and venue are proper in this Court.

### III.  FACTUAL ALLEGATIONS

9.    Long Began working for Phoenix in October 2019.

10.    Fugate started working for Phoenix on February 12, 2018.

11.    Swanson began her employment with Phoenix on September 16, 2019.

12.    Stockard began her employment with Phoenix on October 24, 2019.

13.    Plaintiffs duties involved identifying qualified nursing personnel (RNs, LPs, CNAs) to fill shifts at Phoenix's various nursing home, assisted living, and home health care clients.

14.     In addition, Stockard was also responsible for recruiting the nursing personnel Phoenix would employ.

15.     Plaintiffs were paid $18.00 per hour, and their regular work schedules were from 9:00 a.m. to 5:00 p.m., five days per week.

16.     Shortly after she was hired, Long began to be assigned "on-call" shifts, in addition to her regular workday schedule.

17.     In October, 2019, Fugate also began to be assigned "on-call" shifts, in addition to her regular weekday schedule.

18.     Swanson began being assigned to "on-call" shifts at approximately the time she began her employment.

19.     With occasional deviations, *weeknight* on-call shifts ran 16 hours, from 5:00 p.m. until 9:00 a.m. the following morning.

20.     *Weekend* on-call, again with minor deviations, consisted of a 16-hour shift from 5:00 p.m. Friday until 9:00 a.m. on Saturday, followed by two twenty-four hour shifts, from 9:00 a.m. Saturday to 9:00 a.m. Sunday, and then 9:00 a.m. Sunday through 9:00 a.m. Monday, a total of *64 hours*.

21.     Due to the high volume of calls received during both weeknight and weekend on-call shifts, the employee working the on-call shift was essentially tied to the telephone, and was unable to attend to her personal business for the entire shift.

22.     Long was assigned week-night on-call shifts on two occasions.  She was also required to work an *eight*-hour, partial weekend shift on three occasions.

23.     Fugate was assigned weekly on-call shifts three or four times per week.

24.     Stockard started taking on-call shifts on November 14, 2019.

25. Stockard was assigned weekend on-call virtually every week until her March 13, 2020, termination.

26. Stockard was also assigned week night on-call approximately three times per week.

27. Also in October 2019, Phoenix started to require Fugate to report for work each weekday morning at 7:30 a.m.

28. However, Fugate was *not* paid for this extra 1.5 hours per day.

29. Similarly, Swanson was also required to work "off-the-clock."

30. In addition, Phoenix deducted approximately $50.00 per week from each employee's paycheck to pay premiums on an AFLAC insurance policy for each employee.

31. In August 2020, Long attempted to submit a claim under her AFLAC policy.

32. AFLAC informed Long that her policy had been cancelled because Phoenix had *never* paid the policy premiums.

33. On information and belief, Phoenix has never paid premiums on the AFLAC policy for *any* employee.

34. Phoenix terminated Long on August 31, 2020.

35. Phoenix terminated Ms. Fugate on June 15, 2020.

36. Swanson was terminated on 17, 2020, and was not paid for the eight hours she worked that day.

37. Phoenix terminated Stockard on March 13, 2020.

38. Plaintiffs were paid a flat fee of $100.00 for each on-call shift worked.

39. During her employment, Long worked a total of 56 hours of overtime.

40. She should have been paid $27.00 per hour for *each* of those hours, or a total of

-4-

$1,512.00.[1]

41.    Instead, Phoenix paid Long $100.00 per shift, or a total of $500.00.

42.    Fugate took on-call at Phoenix from October 2019, through her termination on June 15, 2020, a total of almost 36 week.

43.    During that period, Fugate worked a total of 1,432 hours of ***overtime***.

44.    She should have been paid $27.00 per hour for ***each*** of these hours, or a total of $36,664.

45.    Instead, Phoenix paid her $100 per shift, or a total of $9,700.[2]

46.    Additionally, Phoenix also owes Fugate $202.50, for work she was forced to perform off-the-clock.[3]

47.    Swanson worked on-call from October 18, 2019 until shortly before her termination on January 17, 2020.

48.    During her employment, Swanson worked a total of 32 ***full*** weeknight on-call shifts, in addition to working a nine hour on-call shift on October 28, 2019; a twelve hour on-call shift on November 28, 2019, and a twelve hour on-call shift on December 25, 2019.

---

[1]    Two 16-hour weeknight on-call shifts + three 8-hour weekend on-call shifts = 56 hrs. @ $27.00/hr. = $1,512.00

[2]
| Month | Calculation |
|---|---|
| October: | 16 OT hours @ $27.00/hr. = $432 – $200 o/c pay = $232.00 |
| November: | 232 OT hours @ $27.00/hr. = $6,264 – $1,400 o/c pay = $4,864 |
| December: | 240 OT hours @ $27.00/hr. = $6,480 – $1,500 o/c pay = $4,980 |
| January: | 216 OT hours @ $27.00/hr. = $5,832 – $1,600 o/c pay = $4,232 |
| February: | 224 OT hours @ $27.00/hr. $6,048 – $1,500 o/c pay = $4,548 |
| March: | 128 OT hours @ $27.00/hr. = $3,456 – $900 o/c pay = $2,556 |
| April: | 176 OT hours @ $27.00/hr. = $4,752 – $1,200 o/c pay = $3,552 |
| May: | 144 OT hours @ $27.00/hr. = $3,888 – $1,000 o/c pay = $2,888 |
| June: | 56 OT hours @ $27.00/hr. = $1,512 – $400 o/c pay = $1,112 |

Total:    1,432 OT hours @ $27.00/hr. = $36,664 – $9,700 o/c pay = $26,964

[3]    October 21, 2019 through January 11, 2020 = 82 work days; eight 5-day work weeks. Worked 7:30 a.m. to 5:00 p.m. = 47.5 hours total, paid for 40 hours @ $18.00/hour = $720, owed 7.5 hours OT @ $27.00/hour = $202.50)

49.     On *each* of those 35 days, *including Christmas*, Swanson also worked eight hours in the office.

50.     In addition, Swanson also worked a total of 30 weekend on-call shifts, totaling 444 hours.[4]

51.     Stockard was assigned to take on-call shifts at Phoenix for 17 weeks.

52.     During that time, Stockard worked both weekend and weekday on-call shifts.

53.     For her 17 weekend on-call shifts, Stockard worked from 5:00 p.m. on Friday, until 9:00 a.m. on Sunday, a total of 40 hours, in additional to her regular week day schedule of 40 hours per week.

54.     For this additional 40 hours, Stockard was paid a flat fee of $100 for each shift.

55.     In addition, Stockard also took overnight on-call shifts three nights per week, working from 5:00 p.m. to 9:00 a.m. the following day, or 16 hours for each shift.

56.     She was paid $100 for each shift.

57.     Over 17 weeks, Stockard worked a total of 51 shifts, at 16 hours each, or a total of 816 hours.

58.     Stockard's unpaid overtime for those hours is $16,932, making her total unpaid overtime $33,592.[5]

59.     Phoenix refused to provide Plaintiffs with written statements of the reasons for termination, even though Plaintiffs requested such statements.

60.     Phoenix refused, on multiple occasions throughout their employment, to provide

---

[4]     (5 shifts x 12 hrs./shift) + (12 shifts x 16 hrs./shift) + (8 shifts x 24 hrs./shift) = 60 + 192 + 192 = 444

[5]     17 weekend OT shifts x 40/hrs. OT per shift x $27.00/hr. – $1,700 = $16,660.
       17 weeks x 3 wecknight OT shifts/wk. x 16/hrs/shift x $27.00/hr. – $5,100 = $16,16,932
       $16,660 + $16,932 = $33,592

Plaintiffs with their required pay stubs, which would have allowed them to calculate their unpaid wages with more precision.

## IV.  LEGAL ALLEGATIONS

### A.  Federal Allegations Against Defendants

### Count One: FLSA Violation as to Long

61.     Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

62.     On information and belief, Phoenix has an annual dollar volume of sales or receipts in the amount of $500,000 or more, and is therefore an enterprise covered by the FLSA.

63.     Long is a non-exempt employee, as that term is defined by the FLSA.

64.     The FLSA requires that non-exempt employees must be paid at the rate of 1.5 times their regular rate of pay for every hour worked over 40 hours in a given work week.

65.     During her employment, Long worked 56 hours of overtime, for which she should have been paid at the rate of $27.00 per hour ($18.00 x 1.5), or a total of $1,512.00.

66.     Long's total compensation for those overtime hours was $500.00.

67.     Defendants owe Long unpaid overtime in the amount of $1,012.00.

68.     Defendants underpayment of Long's wages is a violation of the FLSA.

69.     If an employer violates the FLSA in bad faith, the court may award, in addition to the unpaid wages, liquidated damages in an amount equal to the amount of wages due the employee, and the employee's reasonable attorney fees and costs of the action.

70.     Defendants' FLSA violation was  intentional,  willful,  and/or  was  done  with reckless disregard to Long's rights, and therefore, Defendant acted in bad faith.

71.     Defendant is liable to Long for unpaid wages in the amount of $1,012.00, liquidated

damages in the amount of $2,024.00, and Long's reasonable attorney fees and costs of litigation, for its bad faith violation of the FLSA.

## Count Two: FLSA Violation as to Fugate

72.     Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

73.     Fugate is a non-exempt employee, as that term is defined by the FLSA.

74.     During her employment, Fugate worked 1,432 hours of overtime, for which she should have been paid at the rate of $27.00 per hour ($18.00 x 1.5), or a total of $36,664.

75.     Fugate's total compensation for those overtime hours was $9,700.

76.     Defendant owes Fugate unpaid overtime in the amount of $26,964.

77.     Defendants' underpayment of Fugate's wages is a violation of the FLSA.

78.     Defendants' FLSA violation was intentional, willful, and/or was done with reckless disregard to Fugate's rights, and therefore, Defendant acted in bad faith.

79.     Defendant is liable to Fugate for unpaid wages in the amount of $26,064.00, liquidated damages in the amount of $26,964.00, and Fugate's reasonable attorney fees and costs of litigation, for its bad faith violation of the FLSA.

## Count Three: FLSA Violation as to Swanson

80.     Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

81.     Swanson is a non-exempt employee, as that term is defined by the FLSA.

82.     During her employment, Swanson worked 444 hours of overtime, for which she should have been paid at the rate of $27.00 per hour ($18.00 x 1.5), or a total of $11,988.00.

83.     Swanson's total compensation for those overtime hours was $9,000.00.

84.     Defendant owes Swanson unpaid overtime in the amount of $2,988.00.

85.     Defendants' underpayment of Swanson's wages is a violation of the FLSA.

86.     Defendants' FLSA violation was intentional, willful, and/or was done with reckless disregard to Swanson's rights, and therefore, Defendant acted in bad faith.

87.     Defendant is liable to Swanson for unpaid wages in the amount of $2,988.00, liquidated damages in the amount of $2,988.00, and Swanson's reasonable attorney fees and costs of litigation, for its bad faith violation of the FLSA.

**Count Four:  FLSA Violation as to Stockard**

88.     Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

89.     Stockard is a non-exempt employee, as that term is defined by the FLSA.

90.     During her employment, Stockard worked 680 hours during her 17 weekend on-call shifts.

91.     Stockard should have been paid $18,360 for those hours.

92.     Instead, Stockard was paid a total of $1,700 for those hours.

93.     In addition, Stockard worked 16-hour week-night on-call shifts three nights per week.

94.     In the course of her employment, Stockard worked 816 hours of week-night overtime, for which she should have received $22,032.

95.     Stockard's actual total pay for those hours was $5,100.

96.     Defendant owes Stockard total unpaid overtime in the amount of $35,592

97.     Defendants' underpayment of Stockard's wages is a violation of the FLSA.

98.     Defendants' FLSA violation was intentional, willful, and/or was done with reckless disregard to Stockard's rights, and therefore, Defendant acted in bad faith.

99.     Defendant is liable to Stockard for unpaid wages in the amount of $35,592.00, liquidated damages in the amount of $35,592, and Stockard's reasonable attorney fees and costs of litigation, for its bad faith violation of the FLSA.

**B.  State Law Allegations Against Defendant**

**Count Five: MWL Violation as to Long**

100.     Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

101.     Defendant employed at least two employees during each week Long worked for the company.

102.     On information and belief, Defendant is not subject to the minimum wage and overtime provisions of the FLSA, and is therefore covered by the MWL.

103.     Long is an employee, as that term is defined by the IMWL.

104.     The MWL requires that non-exempt employees must be paid at the rate of 1.5 times their regular rate of pay for every hour worked over 40 hours in a given work week.

105.     During her employment, Long worked 56 hours of overtime, for which she should have been paid at the rate of $27.00 per hour ($18.00 x 1.5), or a total of $1,512.00.

106.     Long's total compensation for those overtime hours was $500.00.

107.     Defendant owes Long unpaid overtime in the amount of $1,012.00.

108.     Defendants' underpayment of Longs' wages is a violation of the MWL.

109.     If an employer violates the MWL in bad faith, the court may award, in addition to the unpaid wages, liquidated damages in an amount equal to the amount of wages due the employee, and the employees' reasonable attorney fees and costs of the action.

110.     Defendants' MWL violation was  intentional,  willful,  and/or  was  done  with

-10-

reckless disregard to Longs' rights, and therefore, Defendant acted in bad faith.

111.    Defendant is liable to Long for unpaid wages in the amount of $1,012.00, liquidated damages in the amount of $2,024.00, and Longs' reasonable attorney fees and costs of litigation, for its bad faith violation of the MWL.

**Count Six: MWL Violation as to Fugate**

112.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

113.    Fugate is an employee, as that term is defined by the MWL.

114.    During her employment, Fugate worked 1,432 hours of overtime, for which she should have been paid at the rate of $27.00 per hour ($18.00 x 1.5), or a total of $36,664.

115.    Fugates' total compensation for those overtime hours was $9,700.

116.    Defendant owes Fugate unpaid overtime in the amount of $26,964.

117.    Defendants' underpayment of Fugates' wages is a violation of the MWL.

118.    Defendants' MWL violation was intentional, willful, and/or was done with reckless disregard to Fugates' rights, and therefore, Defendant acted in bad faith.

119.    Defendant is liable to Fugate for unpaid wages in the amount of $26,064.00, liquidated damages in the amount of $26,964.00, and Fugates' reasonable attorney fees and costs of litigation, for its bad faith violation of the MWL.

**Count Seven: MWL Violation as to Swanson**

120.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

121.    Swanson is an employee, as that term is defined by the MWL.

122.    During her employment, Swanson worked 444 hours of overtime, for which she

should have been paid at the rate of $27.00 per hour ($18.00 x 1.5), or a total of $11,988.00.

123.   Swansons' total compensation for those overtime hours was $9,000.00.

124.   Defendant owes Swanson unpaid overtime in the amount of $2,988.00.

125.   Defendants' underpayment of Swansons' wages is a violation of the MWL.

126.   Defendants' MWL violation was intentional, willful, and/or was done with reckless disregard to Swansons' rights, and therefore, Defendant acted in bad faith.

127.   Defendant is liable to Swanson for unpaid wages in the amount of $2,988.00, liquidated damages in the amount of $8,964.00, and Swansons' reasonable attorney fees and costs of litigation, for its bad faith violation of the MWL.

**Count Eight:  MWL Violation as to Stockard**

128.   Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

129.   Stockard is an employee, as that term is defined by the MWL.

130.   During her employment, Stockard worked 680 hours during her 17 weekend on-call shifts.

131.   Stockard should have been paid $18,360 for those hours.

132.   Instead, Stockard was paid a total of $1,700 for those hours.

133.   In addition, Stockard worked 16-hour week-night on-call shifts three nights per week.

134.   In the course of her employment, Stockard worked 816 hours of week-night overtime, for which she should have received $22,032.

135.   Stockards' actual total pay for those hours was $5,100.

136.   Defendant owes Stockard total unpaid overtime in the amount of $35,592

137.   Defendants' underpayment of Stockards' wages is a violation of the MWL.

-12-

138.    Defendants' MWL violation was intentional, willful, and/or was done with reckless disregard to Stockards' rights, and therefore, Defendant acted in bad faith.

139.    Defendant is liable to Stockard for unpaid wages in the amount of $35,592.00, liquidated damages in the amount of $35,592, and for Stockards' reasonable attorney fees and costs of litigation, for its bad faith violation of the MWL.

### Count Nine:  WCA Violation as to Long

140.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

141.    Defendant refused to provide Stockard with a written statement of the reasons for her termination, despite tha fact Stockard requested one.

142.    Defendant refused to provide Stockard with her legally required pay stub.

143.    Defendant owes Long an additional $1,012.00 in unpaid overtime.

144.    The WCA requires that an employee who is involuntarily terminated from employment *must* be paid *all* wages due to the employee not later than the next regular payday after the separation.

145.    Additionally, the WCA requires an employer, on request from a terminated employee, to provide the employee with a ***written*** statement of the reason(s) for the termination.

146.    The WCA also requires employers to provide a pay stub showing total earnings, net earnings, and all deductions from the employees' pay.

147.    By failing to pay Longs' $1,012.00 in unpaid overtime by the next payday following her termination, by refusing to provide Long with a written statement of the reasons for her termination, and by refusing to provide Fugate with the required pay stub, Defendant violated the WCA.

148.    If an employer, not acting in good faith, violates the WCA, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.

149.    Defendants' WCA violation pay was  intentional,  willful,  and/or  was  done  with reckless disregard to Fugates' rights, and therefore, Defendant acted in bad faith.

150.    Defendant is liable to Long for unpaid wages in the amount of $1,012.00,  liquidated damages in the amount of $2,024.00, and Longs' reasonable attorney fees and costs of litigation, for its bad faith violation of the WCA.

**Count Ten:  WCA Violation as to Fugate**

151.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

152.    In October 2019, Phoenix started to require Fugate to report for work each weekday morning at 7:30 a.m.

153.    However, Fugate was *not* paid for this extra 1.5 hours per day.

154.    Defendants refused to provide Fugate with a written statement of the reasons for her termination, despite tha fact Fugate requested one.

155.    Defendants refused to provide Fugate with her legally required pay stub.

156.    Defendants owe Fugate an additional $202.50, for work she was forced to perform off-the-clock.[6]

157.    By failing to pay Fugate's $202.50 in unpaid wages by the next payday following her termination, by refusing to provide Fugate with a written statement of the reasons for her

---

[6]    October 21, 2019 through January 11, 2020 = 82 work days; eight 5-day work weeks.  Worked 7:30 a.m. to 5:00 p.m. = 47.5 hours total, paid for 40 hours @ $18.00/hour = $720, owed 7.5 hours OT @ $27.00/hour = $202.50

termination, and by refusing tro provide Fugate with the required pay stub, Defendants violated the WCA.

158.    Defendants' WCA violation pay was intentional, willful, and/or was done with reckless disregard to Fugates' rights, and therefore, Defendants acted in bad faith.

159.    Defendants are liable to Fugate for unpaid wages in the amount of $202.50, liquidated damages in the amount of $405.00, and Fugate's reasonable attorney fees and costs of litigation, for its bad faith violation of the WCA.

**Count Eleven: WCA Violation as to Swanson**

160.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

161.    In October 2019, Phoenix started to require Swanson to report for work each weekday morning at 7:30 a.m.

162.    However, Swanson was ***not*** paid for this extra 1.5 hours per day.

163.    Defendants refused to provide Swanson with a written statement of the reasons for her termination, despite the fact Swanson requested one.

164.    Defendants refused to provide Swanson with her legally required pay stub.

165.    Defendants owe Swanson an additional $202.50, for work she was forced to perform off-the-clock.[7]

166.    By failing to pay Swanson's $202.50 in unpaid wages by the next payday following her termination, by refusing to provide Swanson with a written statement of the reasons for her termination, and by refusing to provide Swanson with the required pay stub, Defendants violated the

---

[7]    October 21, 2019 through January 11, 2020 = 82 work days; eight 5-day work weeks.  Worked 7:30 a.m. to 5:00 p.m. = 47.5 hours total, paid for 40 hours @ $18.00/hour = $720, owed 7.5 hours OT @ $27.00/hour = $202.50

WCA.

167.    Defendants' WCA violation pay was intentional, willful, and/or was done with reckless disregard to Swanson's rights, and therefore, Defendants acted in bad faith.

168.    Defendants are liable to Swanson for unpaid wages in the amount of $202.50, liquidated damages in the amount of $405.00, and Swanson's reasonable attorney fees and costs of litigation, for its bad faith violation of the WCA.

### Count Twelve: WCA Violation as to Stockard

169.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

170.    Defendants refused to provide Stockard with a written statement of the reasons for her termination, despite the fact Stockard requested one.

171.    Defendants refused to provide Stockard with her legally required pay stub.

172.    By refusing to provide Stockard with a written statement of the reasons for her termination, and by refusing to provide Stockard with the required pay stub, Defendants violated the WCA.

173.    Defendants' WCA violation pay was intentional, willful, and/or was done with reckless disregard to Stockard's rights, and therefore, Defendants acted in bad faith.

174.    Defendants are liable to Stockard for her reasonable attorney fees and costs of litigation, for its bad faith violation of the WCA.

### C. State Law Allegations Against Both Defendants

### Count Thirteen: Conversion as to Long

175.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

176.    Phoenix withheld a total of $45.00 each week from Longs' paycheck for the purpose of paying the premiums on Long's AFLAC policy.

177.    Defendants failed to pay the AFLAC premiums for which the money was withheld.

178.    Defendants knowingly and intentionally exercised unauthorized control over Longs' property, and thereby committed conversion.

179.    The actions of Defendants caused Long to suffer a pecuniary loss of $2,025.00.[8]

180.    A person who causes another to suffer a pecuniary loss through the commission of civil conversion is liable to the person who suffers the loss for three times the amount of the loss, plus reasonable attorney fees and costs.

181.    Defendants are liable to Long for $6,075.00, in addition to her reasonable attorney fees and costs of litigation, pursuant to Ind. Code 34-24-3-1.

**Count Fourteen: Conversion as to Fugate**

182.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

183.    Phoenix withheld a total of $45.00 each week from Longs' paycheck for the purpose of paying the premiums on Fugate's AFLAC policy.

184.    Defendant's failed to pay the AFLAC premiums for which the money was withheld.

185.    Defendants knowingly and intentionally exercised unauthorized control over Fugate's property, and thereby committed conversion.

186.    The actions of Defendants caused Fugate to suffer a pecuniary loss of $5,490.00.[9]

187.    A person who causes another to suffer a pecuniary loss through the commission of

---

[8]    $45.00/wk. x 45 weeks = $2,025.00

[9]    $45.00/wk. x 122 weeks = $5,490.00

civil conversion is liable to the person who suffers the loss for three times the amount of the loss, plus reasonable attorney fees and costs.

188.    Defendants are liable to Fugate for $16,470, in addition to her reasonable attorney fees and costs of litigation, for its bad faith violation, pursuant to Ind. Code 34-24-3-1.

## Count Fifteen: Conversion as to Swanson

189.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

190.    Phoenix withheld a total of $45.00 each week from Swanson's paycheck for the purpose of paying the premiums on Swanson's AFLAC policy.

191.    Defendants failed to pay the AFLAC premiums for which the money was withheld.

192.    Defendants knowingly and intentionally exercised unauthorized control over Swanson's property, and thereby committed conversion.

193.    The actions of Defendants caused Swanson to suffer a pecuniary loss of $810.00.[10]

194.    A person who causes another to suffer a pecuniary loss through the commission of civil conversion is liable to the person who suffers the loss for three times the amount of the loss, plus reasonable attorney fees and costs.

195.    Defendants are liable to Swanson for $2,430.00, in addition to her reasonable attorney fees and costs of litigation, for its bad faith violation, pursuant to Ind. Code 34-24-3-1.

## Count Sixteen:  Conversion as to Stockard

196.    Plaintiffs incorporate the allegations in every preceding paragraph as though they were fully incorporated here.

197.    Phoenix withheld a total of $45.00 each week from Stockard's paycheck for the

---

[10]    $45.00/wk. x 18 weeks = $810.00

-18-

purpose of paying the premiums on Stockards' AFLAC policy.

198.   Defendants failed to pay the AFLAC premiums for which the money was withheld.

199.   Defendants knowingly and intentionally exercised unauthorized control over Stockard's property, and thereby committed conversion.

200.   The actions of Defendants caused Stockard to suffer a pecuniary loss of $900.00.[11]

201.   A person who causes another to suffer a pecuniary loss through the commission of civil conversion is liable to the person who suffers the loss for three times the amount of the loss, plus reasonable attorney fees and costs.

202.   Defendants are liable to Stockard for $2,700.00, in addition to her reasonable attorney fees and costs of litigation, for its bad faith violation, pursuant to Ind. Code 34-24-3-1.

## V.  RELIEF REQUESTED

WHEREFORE, Plaintiffs Danielle Long, Joy Fugate, Desiree Swanson, and Ashley Stockard, by counsel, respectfully request the Court to enter judgment in their favor on all claims, and to order the Defendants to provide the following relief:

203.   Order Defendants, jointly and severally, to pay the Plaintiffs all wages and overtime they are due;

204.   Order Defendants, jointly and severally, to pay the Plaintiffs liquidated damages pursuant to the the FLSA, the MWL, the WCA, and/or the WPA;

205.   Order the Defendants, jointly and severally, to pay each Plaintiff an amount equal to three times the pecuniary loss incurred as a result of Defendants'

206.   Order the Defendants, jointly and severally, to pay the Plaintiffs pre- and post-judgment interest on all sums awarded;

---

[11]   $45.00/wk. x 20 weeks = $900.00

207.     Order the Defendants, jointly and severally, to pay the Plaintiffs' reasonable attorney fees and costs of litigation; and

208.     Order the Defendants, jointly and severally, to provide the Plaintiffs with any and all other just and proper relief.

Respectfully submitted,

_s/  Jay Meisenhelder_
Jay Meisenhelder, Atty. No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN  46214
Office Telephone:     317/231-5193
Direct Telephone:     317/899-9920
Facsimile Number:     317/982-5463
Email Address:        jaym@ecrls.com

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MORGAN SUPERIOR COURT NO. 2 |
| | ) ss: | |
| COUNTY OF MORGAN | ) | CAUSE NO. 55D02-2012-MI-001823 |

DANIELLE LONG, *et al.*,                    )
                                            )
                         Plaintiffs,        )
                                            )
               v.                           )
                                            )
PHOENIX STAFFING GROUP, INC. and            )
JILL BUSH,                                  )
                                            )
                         Defendants.        )

## SUMMONS

TO DEFENDANT:      Phoenix Staffing Group, Inc.
                   c/o Jill Bush, President
                   439 Tulip Drive
                   Mooresville, IN  46158

You are hereby notified that you have been sued by the person named as plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

If you need the name of an attorney, you may contact the Indianapolis Bar Association Lawyer Referral Service (317/269-2222) or the Putnam County Bar Association.

Dated ___12/3/2020___  _____      *Stephanie Elliott*     (Seal)
                                       Clerk, Court

**(The following manner of service of summons is hereby designated.)**

____X____      Registered or certified mail.
_____      Service at place of employment, to-wit: _____
_____      **Service on individual - (personal) at above address.**
_____      Service on agent. (Specify) _____
_____      Other Service.  (Specify) _____

Attorney for Plaintiff:      Jay Meisenhelder (19996-49)
                             JAY MEISENHELDER EMPLOYMENT
                             & CIVIL RIGHTS LEGAL SERVICES, P.C.
                             650 North Girls School Road, Suite B20
                             Indianapolis, IN 46214
                             Office Telephone:      317/231-5193
                             Direct Telephone:      317/899-9220
                             Facsimile Number:      317/982-5463
                             Email Address:         jaym@ecrls.com

### *SHERIFF'S RETURN ON SERVICE OF SUMMONS*

I hereby certify that I have served this summons on the _____ day _____, 2020:

(1)  By delivering a copy of the Summons and a copy of the complaint to:

_____

(2)  By leaving a copy of the Summons and a copy of the complaint at: _____

_____, which is

the usual address of _____, and by mailing a copy of the Summons to:

_____at the

above address.

(3)  Other Service or Remarks:_____

_____   Sheriff of _____ County

Sheriff's Costs

      By:_____

                Deputy


### *CLERK'S CERTIFICATE OF MAILING*

I hereby certify that on the _____ day of _____, 2020, I mailed a copy of this summons and a copy of the complaint to the registered agent for defendant,_____, by Certified Mail, Return Receipt Requested, at the address furnished by the plaintiff.

Dated:_____                    _____

                                                     County Clerk

By:_____

          Deputy


### *RETURN ON SERVICE OF SUMMONS BY MAIL*

      I hereby certify that the attached return receipt was received by me showing that:

_____(1)  The Summons and a copy of the complaint mailed to the registered agent for defendant, _____, was accepted by the registered agent for defendant on _____.

_____(2)  The attached return receipt was received by me showing that the Summons and a copy of the complaint  mailed to the registered agent for defendant, _____, was accepted by_____ on behalf of said registered agent for defendant on _____.

_____(3)  The attached return receipt was received by me showing that the Summons and a copy of the complaint was return not accepted on _____.

_____
              County Clerk

By:_____
              Deputy

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MORGAN SUPERIOR COURT NO. 2 |
| | ) ss: | |
| COUNTY OF MORGAN | ) | CAUSE NO. **55D02-2012-MI-001823** |

DANIELLE LONG, *et al.*,                              )
                                                     )
                              Plaintiffs,            )
                                                     )
                    v.                               )
                                                     )
PHOENIX STAFFING GROUP, INC. and                     )
JILL BUSH,                                           )
                                                     )
                              Defendants.            )

**SUMMONS**

**TO DEFENDANT:**        Jill Bush, President
                        Phoenix Staffing Group, Inc.
                        439 Tulip Drive
                        Mooresville, IN  46158

          You are hereby notified that you have been sued by the person named as plaintiff and in the Court indicated above.

          The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiff.

          An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

          If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

          If you need the name of an attorney, you may contact the Indianapolis Bar Association Lawyer Referral Service (317/269-2222) or the Putnam County Bar Association.

Dated _____12/3/2020_____          *Stephanie Elliott*
                                  Clerk, Court

**(The following manner of service of summons is hereby designated.)**

| | |
|---|---|
| _____X_____ | Registered or certified mail. |
| _____ | Service at place of employment, to-wit: _____ |
| _____ | **Service on individual - (personal) at above address.** |
| _____ | Service on agent. (Specify) _____ |
| _____ | Other Service.  (Specify) _____ |

Attorney for Plaintiff:        Jay Meisenhelder (19996-49)
                              JAY MEISENHELDER EMPLOYMENT
                              & CIVIL RIGHTS LEGAL SERVICES, P.C.
                              650 North Girls School Road, Suite B20
                              Indianapolis, IN 46214
                              Office Telephone:        317/231-5193
                              Direct Telephone:        317/899-9220
                              Facsimile Number:        317/982-5463
                              Email Address:           jaym@ecrls.com

### *SHERIFF'S RETURN ON SERVICE OF SUMMONS*

I hereby certify that I have served this summons on the _____ day _____, 2020:

(1)  By delivering a copy of the Summons and a copy of the complaint to:
_____

(2)  By leaving a copy of the Summons and a copy of the complaint at: _____
_____, which is
the usual address of _____, and by mailing a copy of the Summons to:
_____at the
above address.

(3)  Other Service or Remarks:_____

_____ Sheriff of _____ County
Sheriff's Costs
                    By:_____
                              Deputy


### *CLERK'S CERTIFICATE OF MAILING*

I hereby certify that on the _____ day of _____, 2020, I mailed a copy of this summons and
a copy of the complaint to the registered agent for defendant,_____, by Certified
Mail, Return Receipt Requested, at the address furnished by the plaintiff.

Dated:_____                              _____
                                                      County Clerk
By:_____
          Deputy


### *RETURN ON SERVICE OF SUMMONS BY MAIL*

        I hereby certify that the attached return receipt was received by me showing that:

_____(1)  The Summons and a copy of the complaint mailed to the registered agent for defendant,
_____, was accepted by the registered agent for defendant on _____.

_____(2)  The attached return receipt was received by me showing that the Summons and a copy of the
complaint  mailed to the registered agent for defendant, _____, was accepted
by_____ on behalf of said registered agent for defendant on _____.

_____(3)  The attached return receipt was received by me showing that the Summons and a copy of the complaint
was return not accepted on _____.

_____
          County Clerk

By:_____
          Deputy

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MORGAN SUPERIOR COURT |
| | ) | |
| COUNTY OF MORGAN | ) | CAUSE NO. 55D02-2012-MI-001823 |
| | ) | |

DANIELLE LONG, JOY FUGATE,    )
DESIREE SWANSON, and           )
ASHLEY STOCKYARD,              )
                                     )
                   Plaintiffs,    )
                                     )
          v.                  )
                                     )
PHOENIX STAFFING GROUP, INC.  )
and JILL BUSH,                   )
                                     )
               Defendants.  )

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

**This Appearance Form must be filed on behalf of every party in a civil case.**

1.     The party on whose behalf this form is being filed is:

       Initiating _____          Responding   X     Intervening \_\_\_\_ ; and

       the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

          Name of parties:    Phoenix Staffing Group, Inc. and Jill Bush

          Address of parties:  David L. Swider
                                 Bose McKinney & Evans LLP
                                 111 Monument Circle, Suite 2700
                                 Indianapolis, IN 46204

       *(List on a continuation page additional parties this attorney represents in this case.)*

2.     Attorney information for service as required by Trial Rule 5(B)(2):

       David L. Swider
       Attorney No. 517-49
       Bose McKinney & Evans LLP
       111 Monument Circle, Suite 2700
       Indianapolis, IN  46204
       Phone:  (317) 684-5000
       Fax:  (317) 684-5173
       Computer Address:
       dswider@boselaw.com

**IMPORTANT**:  Each attorney specified on this appearance:

(a)     certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)     **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

(c)     understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3.     This is a ___MI___ case type as defined in administrative Rule 8(B)(3).

4.     This case involves child support issues. Yes ____ No __X__ *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5.     This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes ____ No __X__ *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)*  The party shall use the following address for purposes of legal service:

_____         Attorney's address

_____         The Attorney General Confidentiality program address

                (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.state.in.us)**.

_____         Another address (provide) _____

6.     This case involves a petition for involuntary commitment.  Yes ____ No __X__

If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

(a)     Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:
        _____

(b)     State of Residence of person subject to petition: _____

(c)     At least one of the following pieces of identifying information:

    (i)       Date of Birth _____

    (ii)      Driver's License Number _____

              State where issued _____ Expiration date _____

    (iii)     State ID number _____

              State where issued _____ Expiration date _____

    (iv)     FBI number _____

    (v)      Indiana Department of Corrections Number _____

    (vi)     Social Security Number is available and is being provided in an attached confidential document Yes _____ No _____

7.      There are related cases: Yes _____ No _____X_____ *(If yes, list on continuation page.)*

8.      Additional information required by local rule: _____

9.      There are other party members: Yes _____ No ____X____ *(If yes, list on continuation page.)*

10.    This form has been served on all other parties and Certificate of Service is attached: Yes ___Y___        No _____

Respectfully submitted,

/s/ David L. Swider_____
David L. Swider
Attorney No. 517-49

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
dswider@boselaw.com
Phone: (317) 684-5000
Fax: (317) 684-5173

*Attorneys for Defendants, Phoenix Staffing
Group, Inc. and Jill Bush*

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 23, 2020, I electronically filed the foregoing document using

the Indiana E-Filing System (IEFS).  I also certify that on December 23, 2020, the foregoing

document was served upon the following person(s) via IEFS:

> Jay Meisenhelder
> JAY MEISENHELDER EMPLOYMENT&
> CIVIL RIGHTS LEGAL SERVICES, P.C.
> 650 North Girls School Road, Suite D40
> Indianapolis, IN 46214
> jaym@ecrls.com

*/s/ David L. Swider*
David L. Swider

3984278_1

STATE OF INDIANA            )        IN THE MORGAN SUPERIOR COURT
                            )
COUNTY OF MORGAN            )        CAUSE NO. 55D02-2012-MI-001823
                            )
DANIELLE LONG, JOY FUGATE,      )
DESIREE SWANSON, and            )
ASHLEY STOCKYARD,              )
                               )
                 Plaintiffs,   )
                               )
        v.                     )
                               )
PHOENIX STAFFING GROUP, INC.   )
and JILL BUSH,                 )
                               )
                 Defendants.   )

## MOTION FOR EXTENSION OF TIME
## TO RESPOND TO PLAINTIFFS' COMPLAINT

Defendants, Phoenix Staffing Group, Inc. and Jill Bush (collectively "Defendants"), respectfully request an extension of time to and including January 22, 2021 within which to respond to Plaintiffs, Danielle Long, Joy Fugate, Desiree Swanson, and Ashley Stockyard's (collectively "Plaintiffs"), *Complaint for Unpaid Wages* ("Complaint"), and in support thereof state:

1.     Plaintiffs filed their Complaint on or after December 1, 2020.

2.     Pursuant to the Chronological Case Summary, this Court issued it Summonses to the Defendants on or after December 3, 2020.

3.     Pursuant to Ind. Trial Rule 12, Defendants' response to Plaintiffs' Complaint is due—at the earliest—not before December 23, 2020, and such time has not yet elapsed.

4.     Defendants respectfully request a thirty (30) day extension of time from December 23, 2020 to and including January 22, 2021 within which to file their response to Plaintiffs' Complaint.

5.      This motion is made for good cause and not for the purposes of delay.

Wherefore Defendants, Phoenix Staffing Group, Inc. and Jill Bush, respectfully request an

extension of time to and including January 22, 2021 within which to respond to Plaintiffs, Danielle

Long, Joy Fugate, Desiree Swanson, and Ashley Stockyard's *Complaint for Unpaid Wages.*

Respectfully submitted,

*/s/ David L. Swider*
David L. Swider
Attorney No. 517-49

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
dswider@boselaw.com
Phone: (317) 684-5000
Fax: (317) 684-5173

*Attorneys for Defendants, Phoenix Staffing
Group, Inc. and Jill Bush*

## CERTIFICATE OF SERVICE

I certify that on December 23, 2020, I electronically filed the foregoing document using

the Indiana E-Filing System (IEFS).  I also certify that on December 23, 2020, the foregoing

document was served upon the following person(s) via IEFS:

Jay Meisenhelder
JAY MEISENHELDER EMPLOYMENT&
CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN 46214
jaym@ecrls.com

*/s/ David L. Swider*
David L. Swider

3981992_1

2

STATE OF INDIANA )          IN THE MORGAN SUPERIOR COURT
                 )
COUNTY OF MORGAN )          CAUSE NO. 55D02-2012-MI-001823-
                 )                            ∂\01-PL-16
DANIELLE LONG, JOY FUGATE, )
DESIREE SWANSON, and       )
ASHLEY STOCKYARD,          )
                           )
              Plaintiffs,  )
                           )
       v.                  )
                           )
PHOENIX STAFFING GROUP, INC. )
and JILL BUSH,             )
                           )
              Defendants.  )

## ORDER GRANTING MOTION FOR EXTENSION OF TIME
## TO RESPOND TO PLAINTIFFS' COMPLAINT

ORDER REDOCKETING CASE AS A CP CASE TYPE

This matter comes before the Court on Defendants, Phoenix Staffing Group, Inc. and

Jill Bush's (collectively "Defendants") *Motion for Extension of Time to Respond to Plaintiffs'*

*Complaint*; and the Court, being duly advised in the premises, finds that said motion should be and

hereby is GRANTED.

IT IS THEREFORE ORDERED that the Defendants shall have to and including

**January 22, 2021** within which to file their response to Plaintiff's *Complaint for Unpaid Wages.*

The court, on its own motion, notes this matter is filed as a "MI" case and is in the nature
of a wage claim. The proper case type is as "PL" for such an action, and the clerk is ordered
to redocket this matter as a PL case type for all further proceedings. The caption in this case
is ordered amended to reflect this.

So Ordered this    **January 1, 2021**

_____
Judge, Morgan Sup. Ct. No.2